McPHERSON v. DeCONICK.

1. MORTGAGES—SIGNATURES—CONSIDERATION—FINDING OF COURT.
In suits to foreclose mortgages and hold mortgagor for deficiency, evidence *held*, sufficient to sustain finding of trial court that signatures of mortgagor were genuine and that mortgagee bank parted with full amount of consideration named in the mortgage.

2. SAME—CONSIDERATION.
A valid consideration for a mortgage may consist of a detriment to one party or a benefit to the other.

3. SAME.
Parting with full amount of consideration named in mortgages by mortgagee *held*, a sufficient consideration even though no part of the consideration may have been received by the mortgagor.

Appeal from Oakland; Gadola (Paul V.), J., presiding. Submitted June 4, 1935. (Docket No. 19, Calendar No. 38,388.) Decided September 9, 1935.

Separate bills by Hugh A. McPherson, receiver of Pontiac Commercial & Savings Bank, against Jennie DeConick and Albert Griggs and wife, to foreclose mortgages and for deficiency decrees. Cases consolidated for trial and appeal. Separate decrees for plaintiff. Defendant DeConick appeals. Affirmed.

*Patterson & Patterson,* for plaintiff.

*James H. Lynch,* for defendant DeConick.

Butzel, J.    Plaintiff receiver brought proceedings to foreclose two mortgages, respectively for $2,500 and $5,000, given by Jennie DeConick on May 16, 1927, to secure promissory notes of like amount, the $2,500 mortgage being on lots 27 and 28, assessor's plat No. 5, etc., in the city of Pontiac, Michigan, and the $5,000 mortgage on lot 6 of the same subdivision.    Albert G. Griggs and Minnie Griggs, subsequent purchasers, were joined as parties defendant.    Mrs. DeConick, appellant, claimed that she never signed the mortgages, and that she had never executed any mortgage at any time.    She was a woman of means, and as a rule had a fair-sized bank account.    It is further intimated that her signatures on the notes and mortgages were either not genuine or obtained through fraud.

There seems to be a considerable amount of mystery as to just how the mortgages were given, but we are impressed with the record which fully sustains the finding of the trial judge that the signatures were genuine; that the bank parted with the full amount of the consideration named in the mortgages.    The court granted decrees of foreclosure holding the defendants liable for any deficiency in each instance.    The cases were consolidated and tried together.

Mrs. DeConick was accustomed to loaning money and not borrowing it.    The case was not heard until almost seven years after the execution of the mortgages.    The testimony of some of the witnesses is somewhat vague and in some respects evasive.    The judge did find that there were evidences of deception and fraud practiced by Griggs but not participated in by the bank.    At the time the mortgages were given, the property was considered of considerable value.    Griggs owned a vendee's interest

in a land contract upon which approximately $2,000 was still due, and Mrs. DeConick held the vendor's interest. Griggs was anxious to pay off a third party who was interested in the profits from the contract. Large offers had been made for the property. Griggs had a great many deals with Mrs. DeConick; the contract originally covered four acres of land, and Mrs. DeConick executed many deeds in releasing parcels of property. The relationship between her and Griggs was a friendly one. At one time part of the mortgaged property had been sold for $17,500. Apparently there was but little risk in executing mortgages secured by real estate at the time valued at over twice the amount of the respective loans. Griggs was anxious to pay off Mrs. DeConick and his associate and he applied to the Pontiac Commercial & Savings Bank for the loans. The bank's record shows that it declined to make the loans inasmuch as Griggs owed the bank considerable amounts on other loans and his record was not satisfactory. Thereupon the loans were made direct to Mrs. DeConick and when the mortgages were delivered at the bank the amounts thereof were credited to Griggs' account. Notwithstanding the unbusinesslike manner in which the loans were handled and the fact that the moneys were not turned over to appellant, but credited to Griggs' account, there is no doubt but that the bank parted with $7,500. The bank records further show that the board approved of the loans direct to Mrs. DeConick several days after they were made. It appears that the final approval of the transaction was made by the president of the bank, who died some time before the case was heard. His testimony would throw considerable light on the transaction. The most that can be done is to theorize as to what occurred. It is within the range of probability that

on account of the numerous business transactions that appellant and Griggs had, and the friendly relationship existing between them, she was not unwilling to assist him by executing the mortgages. Considerable of the mystery is dispelled by the fact that shortly after the loans were made Mrs. DeConick gave a deed conveying lots 27 and 28 to Griggs and wife. The deed, which was duly recorded, recites that it was given subject to the $2,500 mortgage running to the bank, which the grantees assumed and agreed to pay. A balance of approximately $2,000 was paid over to Mrs. DeConick at the time the deed was given. There was another deed signed by Mrs. DeConick and properly witnessed but not acknowledged, conveying both lots 6 and 27 and 28, as well as other property. The deed was not recorded but was delivered to Griggs and by some mistake was included in papers that Griggs turned over to Mrs. DeConick and brought into court by her attorney. Attached to the deed by a pin was a slip of paper which bore visual evidence that it was formerly pasted to some other instrument. The slip of paper states that the deed is given subject to the two mortgages in question. The trial judge stated that he did not believe the slip was attached to the deed at the time of the delivery. Griggs, however, did testify that he and his wife agreed to assume the mortgages and that they received the two deeds. The record further shows that Mrs. DeConick was somewhat lax in the way she executed instruments and that at times she had them notarized by telephoning to the notary. The giving of the deed to lots 27 and 28 subject to the mortgages leads us to the conclusion that the judge was correct in granting decrees in favor of plaintiff.

While there is some question raised as to what consideration Mrs. DeConick received, there can be no question but that the bank parted with a consideration through Mrs. DeConick's act. A valid consideration may consist of a detriment to one party or a benefit to the other. *Steep* v. *Harpham,* 241 Mich. 652. A parting with the $7,500 by the bank on mortgages furnished by Mrs. DeConick was a sufficient consideration in the instant case. The court held that even if two innocent parties were caused to suffer by the transaction, Mrs. DeConick executed the notes and mortgages so it was her act which allowed defendant Griggs to receive the money from the bank, and that by her act she caused the bank to part with the amount involved. She, therefore, should be held responsible for her act or her negligence in not knowing what she was doing at the time she executed the mortgages.

The decree of the trial court is affirmed, with costs to plaintiff.

POTTER, C. J., and NELSON SHARPE, NORTH, FEAD, WIEST, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.